Gordon M. Fauth, Jr. (Cal. Bar No. 190280)
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

Attorneys for Individual and
Representative Plaintiff James R. Pittman

FILED
NOV 26 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JAMES R. PITTMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., a California Corporation,<br><br>Defendant | Case No. C08-05375 RS ADR<br><br>CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR NEGLIGENT MISREPRESENTATION; VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; UNJUST ENRICHMENT; FALSE ADVERTISING; AND UNFAIR COMPETITION IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.*<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James R. Pittman, on behalf of himself and all others similarly situated, and where appropriate, on behalf of the general public, alleges as follows:

## NATURE OF THE ACTION

1. Defendant Apple, Inc. ("Apple") enticed Plaintiff and members of the proposed Class to buy its iPhone 3G "Smartphone" by promising them superior functionality and "3G" data speeds "twice as fast" as provided by the prior model iPhone over the AT&T wireless network. Plaintiff and Class members were required to pay extra monthly fees for the purported

1

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

3G data functionality and speeds. Unfortunately, the iPhone 3G had been rushed to market in a defective state, and does not perform as represented. Because of a defective chipset and/or firmware, it does not provide data connectivity "twice as fast" as the prior model iPhone. It is not fully compatible with 3G networks and fails to deliver 3G data speeds for more than a fraction of connection time. Furthermore, when using the iPhone 3G in 3G mode, users also experience unreliable voice service, including vastly-increased numbers of dropped calls.

2. Plaintiff and Class members are now locked into multiyear contracts which require them to pay an extra fee each month for a benefit they never received. Accordingly, Plaintiff brings this class action and seeks relief, including damages and equitable relief, for himself and members of the proposed Class.

## JURISDICTION

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and Plaintiff and many members of the proposed Plaintiff Class are citizens of states of which Defendant is not a citizen.

4. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. section 1367.

## INTRADISTRICT ASSIGNMENT

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. section 1391 subsections (b) and (c), and Civil L.R. 3-2 subsections (c) and (e). Defendant is based in Santa Clara County and/or transacts business in this division and County and/or a substantial part of the events giving rise to the claims at issue in the litigation arose in this division and County.

## THE PARTIES

6. Plaintiff James R. Pittman is a resident of the State of Washington, who purchased the iPhone 3G in or around July 2008, incurring monetary damages and injury as a result of the conduct complained of herein.

2

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

7.  Defendant Apple, Inc. was and is a California corporation based in Cupertino, Santa Clara County, California, engaged in the business of manufacturing, marketing and selling computers and other electronic devices and products, including the iPhone 3G cellular phone. In 1976, the Apple computer helped launch the microcomputer revolution. Since that time, the company has remained a leader in computer technology, but has also branched into related fields, including multimedia devices, and, more recently, cellular phones.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### History of Mobile Radio Communication

8.  The first portable two-way radio was the SCR-300, a battery-powered, backpacked "Walkie-Talkie" developed in the early 1940s by Galvin Manufacturing Corporation (later renamed Motorola), for the United States military. Galvin/Motorola soon thereafter developed the smaller SCR-536 transceiver, or "Handie-Talkie," which could be carried by hand (barely). Both devices used vacuum tubes and high-voltage batteries. Although these radios were used to communicate with other radio stations and had no capability to route calls into the telephone system, the age of personal radio communication had begun.

9.  Mobile radiotelephones with direct dialing capability appeared in the 1950s, as heavy, vehicle-mounted devices. In the 1954 movie *Sabrina*, based on Billy Wilder's play *Sabrina Fair*, the businessman Linus Larrabee (played by Humphrey Bogart) placed a call from the phone in the back of his limousine. However, these mobile phones were large, expensive devices available only to the few.

10. By the 1970s, solid-state, miniaturized electronics had displaced vacuum tubes, making possible the design of much smaller units. Fittingly, it was Motorola that introduced the first hand-held mobile phone. In a milestone event, on April 3, 1973, while walking the streets of New York City, Motorola's Dr. Martin Cooper used the company's prototype hand-held DynaTAC (DYNamic Adaptive Total Area Coverage) cellular phone to place a wireless call to rival Joel Engel, head of AT&T's Bell Labs.

11.     With the DynaTAC in hand, Motorola and AT&T/Bell Labs were able to convince the Federal Communications Commission (FCC) to allocate spectrum for a cellular phone system. Using relatively low transmission power, the "cell" phone would initiate calls through the nearest station of a network of base stations, each station serving its own small geographical "cell." Aside from facilitating small, battery-powered wireless phones, the low power involved also meant that different stations in the same general area could concurrently reuse the same frequencies, greatly multiplying the number of cellular customers that could be serviced using the available frequency allocations. Another feature of the cellular concept was that as mobile users moved between cells, an ongoing call would be "handed off" to the next cell's station.

12.     In 1978, the first cellular phone network was tested in Chicago with 2000 trial customers. In 1981, a test began in the Washington D.C./Baltimore area. In 1983, the first American commercial cellular service, using the analog AMPS (Advanced Mobile Phone Service) protocol, was launched in Chicago by Ameritech. In 1983, the FCC approved the Motorola DynaTAC 8000X as the first mass-produced, handheld cellular phone. It was 10 inches high and weighed 28 ounces, not counting its "rubber duck" antenna.

13.     Through the 1980s and 1990s, cellular phones proliferated and cellular networks evolved. The original analog AMPS protocol was joined by digital protocols allowing servicing of even more concurrent users and offering improved voice quality as well as data connectivity to the Internet. In the United States, competing wireless carriers divided into two main groups: those utilizing the CDMA protocol for digital voice transmissions, including Verizon and Sprint, and those using the GSM protocol, including Cingular/AT&T and T-Mobile. Digital cameras were added to many phones. PDA-phones appeared, combining the features of a cellular phone with the functionality of a (small) personal computer and allowed browsing and email functions. Data protocols and Internet connectivity improved, with providers offering ever-faster speeds.

14.     In 1984, there were some 12,000 cell phone subscribers in the United States. By June 2008, there were approximately 262.7 million subscribers in the United States -- 84 percent

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

of the population. Manufacturing cell phones has become a huge industry, with makers vying with each other to roll new models with additional features off their assembly lines. In 2007, Nokia, the largest maker of cell phones, achieved worldwide sales of $23 billion, followed closely by Motorola, with sales of $19 billion.

15. With most of the American population using cell phones, the wireless "voice" market is nearing saturation. However, most wireless subscribers still do not use phones providing high-speed data connectivity. The frontier of opportunity for both carriers and cell phone manufacturers presently lies in providing "Smartphones" with high-speed Internet connectivity. Smartphone devices not only cost customers more to purchase, they typically require the customer to enter into a multiyear contract under which the customer pays an additional monthly fee for the data service. In one example of how this market is growing, for its fiscal year ended March 1, 2008, RIM (Research in Motion), maker of the popular "Blackberry" Smartphone, reported revenues of $6.01 billion, up 98% from $3.04 billion last year.

16. The use of mobile phones to access the Internet over wireless cellular networks is growing rapidly in popularity. However, data speeds remain frustratingly slow compared to the speeds attained by computers through DSL and other wideband connections. There is intense competition both among wireless carriers and between phone manufacturers to provide faster data connectivity. The leading wireless carriers currently offer "Third-Generation" or "3G" data protocols and speeds for 3G-capable phones, as well as 2G and 2.5G protocols for slower devices. AT&T's wireless network provides 3G speeds utilizing the HSDPA/UMTS (High Speed Downlink Packet Access/Universal Mobile Telephone System) protocols, allowing 3G-capable phones to download data at speeds of up to 3.6Mbps (mega-bits-per-second).

### Apple and the iPhone 3G

17. Apple introduced its first iPhone in early 2007. With a touch-screen interface providing a "virtual" keyboard, the iPhone was a stylish, Internet-connected Smartphone device. In addition to phone features, the iPhone offered camera, media player and computer functions. In the United States, Apple marketed the iPhone exclusively for the AT&T wireless network.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Utilizing the EDGE data protocol, the iPhone could be used for e-mail, text messaging and web browsing. Apple advertised and marketed the iPhone aggressively. In spite of the requirement that purchasers subscribe to expensive voice and data plans, the iPhone became an immediate success. Time Magazine named it the Invention of the Year.

18. Capitalizing on its success with the iPhone and wanting to remain competitive against other manufacturers already providing phones capable of 3G data speeds, Apple rushed the "iPhone 3G" to market in July 2008. In its press releases and advertising, Apple represented that the iPhone 3G was compatible with the AT&T 3G wireless network and would provide 3G data speeds "twice as fast" as the prior model iPhone over AT&T's network. Customers purchasing the iPhone 3G were required to enter into new two-year contracts and pay service fees, including an extra $10 per month fee for the purported "twice as fast" speed.

19. Apple's iPhone 3G is functionally similar to the iPhone but adds the 3G UMTS/HSDPA data protocol to the EDGE protocol supported by the iPhone. The iPhone 3G is available in versions offering 8GB or 16GB of storage. In addition to representing that the iPhone 3G would deliver data "twice as fast" as the prior iPhone over the AT&T cellular network, Apple promised that the iPhone 3G would seamlessly switch between 3G and the other available data protocols, always providing the fastest speed possible:

> iPhone 3G uses a technology protocol called HSDPA (High-Speed Downlink Packet Access) to download data fast over UMTS (Universal Mobile Telecommunications System) networks. Email attachments and web pages load <u>twice as fast</u> on 3G networks as on 2G EDGE networks. And since iPhone 3G seamlessly switches between EDGE, faster 3G, and even faster Wi-Fi, <u>you always get the best speeds possible</u>.

20. Apple aggressively marketed the iPhone 3G, selling it online, through Apple Retail Stores, and through partners such as AT&T, Best Buy and Radio Shack. Apple's nationwide marketing campaign, using print, internet, radio and television media, was successful in convincing many thousands of consumers to switch to the iPhone and pay an additional monthly fee for its purported "twice as fast" speed.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

21. Unfortunately, the iPhone 3G did not perform as advertised. Apple had rushed the iPhone 3G to market in a defective state. It was not fully compatible with AT&T's 3G network. The iPhone 3G did not deliver data "twice as fast" as the prior iPhone. In actual use, it provided 3G data speeds, at best, only a fraction of the time connected. Also, far from switching seamlessly between available data protocols to provide the best possible speed, in fact, the iPhone 3G would often provide slower data speeds than other 2G and 3G phones operating on the same network from the same location. When using the iPhone 3G in 3G mode, users also experienced poor reception, page freezes on web browsing, unexplained errors, and an unusually high number of dropped calls and other glitches.

22. The iPhone 3G cannot throughput data reliably at 3G speeds because of a faulty chipset and/or firmware. As reported in *Iphone Buz* by Chris Davies on August 12, 2008:

> The ongoing reception issues faced by many iPhone 3G users may be due to its Infineon 3G chipset and the protocol stack that it uses, according to Nomura Securities analyst Richard Windsor. In a research note released today, Windsor pointed the blame at Infineon as presumed 3G chipset supplier and suggested that their "immature" protocol software was key to the Apple cellphone's woes: "We believe that these issues are typical of an immature chipset and radio protocol stack where we are almost certain Infineon is the 3G supplier" Richard Windsor, analyst, Nomura Securities.

23. Apple has provided firmware updates in an apparent effort to fix the iPhone 3G's data speed problems, to no avail. According to industry experts, it is unlikely that a firmware update can fix the faulty hardware: "Windsor paints a much more serious picture, claiming that the issue is unlikely to be rectified with changes in firmware. Instead, according to the analyst, Apple would have to actually replace the 3G chipset in question in order to avoid consumers claiming they are not getting the performance they paid for." Davies, *iPhone Buz, supra.*

24. Apple has succeeded in selling millions of iPhone 3G units to unsuspecting buyers. Backed by Apple's aggressive advertising campaign, the iPhone 3G has become yet another huge marketing success for the company. In October 2008, Apple reported that for the

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

just-ended quarter alone, it had sold 6,892,000 iPhone 3G units, more than six times the number of iPhones sold in the same quarter last year:

> Quarterly iPhone units sold were 6,892,000 compared to 1,119,000 in the year-ago-quarter. "Apple just reported one of the best quarters in its history, with a spectacular performance by the iPhone—we sold more phones than RIM," said Steve Jobs, Apple's CEO. "We don't yet know how this economic downturn will affect Apple. But we're armed with the strongest product line in our history, the most talented employees and the best customers in our industry. And $25 billion of cash safely in the bank with zero debt."

25. Apple continues to package, label, advertise and market the iPhone 3G as a "3G" phone capable of delivering 3G speeds on the AT&T 3G network. Nowhere on the box or label is the consumer told that the iPhone 3G is not fully compatible with AT&T's 3G network, that it contains a defective chipset, or that it will not provide sustained 3G speeds.

### Plaintiff's Experience

26. Plaintiff's experience is typical. He purchased an iPhone 3G soon after it was rolled out, in or about July 2008. In use, including in his metropolitan Seattle, Washington area, his iPhone 3G did not perform as represented and failed to provide him with reliable 3G functionality. It did not provide 3G data speeds "twice as fast" as the prior-model iPhone. In fact, when in 3G mode, he experienced unreliable voice and data service, with page freezes on browsing and downloading, constant error messages, and so many dropped calls that the phone's functionality as even a voice-only communication device was severely impaired. The iPhone 3G would work reliably, if at all, only when locked into the slower EDGE data mode.

27. Plaintiff spent move than 20 hours on the phone with Apple and AT&T technicians, who were unable to solve the problems he experienced. His iPhone 3G was replaced three times, but the problems persisted. Apple provided firmware updates, but the phone still does not work reliably as a 3G device.

28. In spite of the fact that Plaintiff was supplied with an iPhone 3G which simply did not perform as advertised, he remains locked into a two-year contract for service which requires him to pay additional fees each month for the purported 3G data service.

29. Plaintiff and thousands of consumers enticed by Apple to buy the iPhone 3G are now locked into multiyear contracts whereby they are forced to pay extra monthly fees for promised 3G functionality and "twice as fast" data speeds that they have not been provided and that the iPhone 3G is incapable of delivering.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of himself and all other members of a proposed plaintiff Class ("Class") initially defined as:

> **"All persons in the United States who owned the iPhone 3G and/or who paid for data service on the iPhone 3G, except for employees, officers and directors of Apple, Inc."**

31. This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4) and Rule 23(b)(1), (2) or (3) of the Federal Rules of Civil Procedure and case law thereunder.

### Numerosity of the Class
### (Fed. R. Civ. P. 23(a)(1))

32. Class members are so numerous that their individual joinder is impractical. Plaintiff estimates that the Class comprises millions of members. The precise number of Class members and their addresses are unknown to Plaintiff at this time, but can be ascertained from Defendant's records. Class members may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

### Predominance of Common Questions of Fact and Law
### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

33. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. The common legal and factual questions include:

    (a) Whether the iPhone 3G as designed provided data speeds "twice as fast" as the iPhone or other EDGE-only phones;

(b) Whether the iPhone 3G seamlessly switched between the data modes available to provide users with the fastest data speeds possible;

(c) Whether Apple knew that the iPhone 3G would not provide data speeds "twice as fast" as the prior iPhone;

(d) Whether Apple knew that the iPhone 3G would not switch seamlessly between data modes to provide users with the fastest data speeds possible;

(e) Whether the iPhone 3G was fully compatible with AT&T's 3G network;

(f) Whether Apple misrepresented the benefits, uses, attributes and characteristics of the iPhone 3G;

(g) Whether the utility of Apple's conduct was outweighed by the injury done consumers;

(h) Whether Apple falsely advertised the iPhone 3G;

(i) Whether Apple was unjustly enriched by the conduct complained of herein; and

(j) The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled.

### Typicality of Claims
### (Fed. R. Civ. P. 23(a)(3))

34. Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class members, became an owner of the iPhone 3G and/or paid for data service on the iPhone 3G.

### Adequacy of Representation
### (Fed. R. Civ. P. 23(a)(4))

35. Plaintiff is an adequate representative of the Class, because his interests do not conflict with the interests of the members of the Class and he has retained counsel competent and experienced in complex class action and consumer litigation.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

36. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority of a Class Action

### (Fed. R. Civ. P. 23(b)(3))

37. A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. The damages suffered by each individual Class member, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the many thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness
### of Final Injunctive or Declaratory Relief

### (Fed. R. Civ. P. 23(b)(1) And (2))

38. In the alternative, this action may properly be maintained as a class action, because:

    (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Apple; or

    (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Apple has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (For Negligent Misrepresentation)

39. Plaintiff incorporates by reference and realleges all paragraphs previously alleged as if fully set forth herein and further alleges as follows.

40. The conduct and actions of Defendant Apple complained of herein constitutes negligent misrepresentation.

41. Defendant made false representations of material facts, including concerning its iPhone 3G cellular phone, its data speeds and the characteristics thereof, to Plaintiff and Class members. Among other things, Defendant falsely represented that the iPhone 3G would provide sustained and reliable 3G data speeds and/or that it would provide data speeds "twice as fast" as provided by the prior model iPhone.

42. Defendant did not have reasonable grounds for believing that such false representations were true when made.

43. Defendant made such false representations intending that Plaintiff and Class members would rely on them.

44. Plaintiff and Class members reasonably relied on such false representations.

45. Plaintiff's and Class members' reliance on Defendant's false representations was a substantial factor in causing harm to Plaintiff and Class members.

46. Accordingly, Plaintiff and Class members are entitled to and seek damages in an amount to be determined according to proof at trial.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## SECOND CAUSE OF ACTION

### (For Violation of the Song-Beverly Consumer Warranty Act)

47. Plaintiff incorporates by reference and realleges all paragraphs previously alleged as if fully set forth herein and further alleges as follows.

48. Defendant Apple by its conduct complained of herein has violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* and similar consumer warranty laws of other States.

49. Plaintiffs and Class members are "buyers" of "consumer goods," namely purchasers of the subject iPhone 3G phones.

50. At the time of purchase, Defendant Apple was engaged in the business of selling the subject consumer goods to retail buyers and/or manufacturing the subject consumer goods.

51. As set out herein, the subject consumer goods were not of the same quality as those generally acceptable in the trade, were not fit for the ordinary purposes for which such goods are used, were not adequately contained, packaged, and labeled, and/or did not measure up to the promises or facts stated on the container or label.

52. Defendant placed the iPhone 3G phone into the stream of commerce representing and knowing that the intended and ordinary purpose of the device was to provide sustained 3G connectivity and that purchasers would purchase the phone expecting it to provide reliable and sustained 3G connectivity.

53. Plaintiff and Class members purchased the iPhone 3G with the reasonable expectation, based on the ordinary purpose for which the device was labeled, advertised and intended, that the phone would provide reliable and sustained 3G connectivity to the Internet. In fact, the iPhone 3G is not fit for its labeled, advertised, ordinary and intended purpose of providing reliable 3G connectivity, and the iPhone 3G has not provided Plaintiff and Class members with reliable and sustained 3G connectivity when used as designed.

95. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members sustained injury and damages in an amount to be determined at trial.

54. Accordingly, Plaintiff and Class members are entitled to damages according to proof, attorneys' fees and costs of suit, civil penalties and other legal and equitable remedies.

### THIRD CAUSE OF ACTION

**(For Violation of the Consumers Legal Remedies Act)**

55. Plaintiff incorporates by reference and realleges all paragraphs previously alleged as if fully set forth herein and further alleges as follows.

56. Defendant Apple by its actions complained of herein has violated the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and similar consumer protection laws of other States.

57. Defendant's acts, practices, representations, omissions, and courses of conduct with respect to the production, promotion and marketing of the iPhone 3G violate the Consumer Legal Remedies Act in that, among other things:

    (a) Defendant represented that its goods had characteristics, ingredients, uses, benefits, or quantities which they do not have;

    (b) Defendant advertised their goods with the intent not to sell them as advertised; and/or

    (c) Defendant represented that its goods were of a particular standard, quality or grade when they are of another standard, quality or grade.

58. As a direct and proximate result of Defendant's violations, Plaintiff and Class members were injured.

59. Plaintiff and Class members are therefore entitled to and seek equitable relief as set forth below, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION

**(For Unjust Enrichment)**

60. Plaintiff hereby incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows.

61. Plaintiff asserts this claim for unjust enrichment against Defendant on behalf of himself and all members of the Class.

62. By its wrongdoing complained of herein, including without limitation false representations, material omissions and supply of goods of a quality below that represented, Defendant Apple has reaped revenues and profits at the direct expense and injury of Plaintiff and Class members.

63. By such conduct, Defendant has benefited, and continue to benefit, at the expense of Plaintiff and Class members.

64. There is no legal or equitable justification for Defendant's actions, and Defendant's actions are in violation of statutory and/or common law, as set forth herein.

65. Defendant has thus been unjustly enriched at the expense of Plaintiff and Class members.

66. Plaintiff and Class members are therefore entitled to restitution and/or disgorgement of Defendant's wrongful enrichment and to imposition of a constructive trust on such monies as of the date Defendant wrongfully received such monies.

## FIFTH CAUSE OF ACTION

### (For False Advertising)

67. Plaintiff incorporates by reference and realleges all paragraphs previously alleged as if fully set forth herein and further alleges as follows.

68. Defendants' acts, conduct and practices, as alleged herein, constitute false advertising in violation of Business and Professions Code section 17500 *et seq.* and similar false advertising laws of other States.

69. Defendant, with the intent to market and sell the iPhone 3G phone to consumers, made or disseminated or caused to be made or disseminated before the public in this State and other States, in standardized written and electronic form, including in print media, broadcast media and over the Internet, statements concerning the data speed and other characteristics of the iPhone 3G which (1) were untrue or misleading, and which were known, or which by the

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

exercise of reasonable care should have been known, to be untrue or misleading, or (2) which were made as part of a plan or scheme with the intent not to sell the iPhone 3G as advertised.

70. As a direct and proximate result of Defendant's false advertising practices as alleged herein, Defendants were able to: (a) sell more iPhone 3G units than they otherwise would have and cause more consumer to enter into contracts for iPhone 3G service than would otherwise have been the case; and/or (b) charge inflated prices for iPhone 3G units and associated goods and services, and accordingly received and are in possession of excessive and unjust revenues and profits.

71. Plaintiff, on behalf of himself and Class members, and where appropriate, the general public, seeks and is entitled to rescission and disgorgement of all profits Defendant obtained from such false advertising.

## SIXTH CAUSE OF ACTION

**(For Violations of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)**

72. Plaintiff hereby incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows.

73. Defendant Apple's business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200, *et seq.*, and similar unfair competition laws of other States.

74. Defendant's practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate statutory law and the common law.

75. Defendant's actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused consumers.

76. Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they have a capacity and tendency to deceive members of the public.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

77. As a result of Defendant's wrongful business practices, Plaintiff and Class members have suffered injury in fact. Among other things, Plaintiff and Class members were caused to purchase a product which did not perform as represented, and are now locked into multiyear contracts requiring them to pay months fees for a benefit they do not receive.

78. Defendant's wrongful business practices present an ongoing and continuing threat to the general public.

79. Accordingly, Plaintiff is entitled to and prays for judgment and for equitable relief for himself and Class members, and, where appropriate, members of the general public, including rescission, disgorgement, restitution, and for attorneys' fees and costs of suit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and Class members, and where appropriate, the general public, prays for judgment against Defendant as follows:

(1) For damages according to proof at trial;

(2) For rescission;

(3) For restitution and disgorgement;

(4) For imposition of a constructive trust for the benefit of Plaintiff and Class members;

(5) For an award of attorneys' fees;

(6) For an award of the costs of suit incurred herein, including expert witness fees;

(7) For an award of interest, including prejudgment interest, at the legal rate;

(8) For equitable, injunctive and declaratory relief; and

(9) For such other and further relief as this Court deems just and proper.

Respectfully submitted,

**LITIGATION LAW GROUP**

Date: November 26, 2008     By: _____
Gordon M. Fauth, Jr.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

Attorneys for Individual and Representative
Plaintiff James R. Pittman

## DEMAND FOR JURY TRIAL

Plaintiff James R. Pittman hereby demands trial by jury of all claims so triable.

LITIGATION LAW GROUP

Date: November 26, 2008   By: _____
                              Gordon M. Fauth, Jr.

1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

Attorneys for Individual and Representative
Plaintiff James R. Pittman

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF